**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
Fred B. Ringel, Esq.
William A. Rome, Esq.
Steven B. Eichel, Esq.
*Withdrawing Counsel to the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **WB BRIDGE HOTEL LLC and** | Case No. 20-23288 (SHL) and |
| **159 BROADWAY MEMBER LLC,** | Case No. 20-23289 (SHL) |
| | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------X

**LEECH TISHMAN ROBINSON BROG, PLLC'S RESPONSE TO UNITED STATES TRUSTEE'S LETTER REGARDING (I) MOTION OF LEECH TISHMAN ROBINSON BROG, PLLC TO WITHDRAW AS COUNSEL TO THE POST-CONFIRMATION DEBTORS, WB BRIDGE HOTEL LLC AND 159 BROADWAY MEMBER LLC, AND (II) MOTION OF TRUSTEE TO DISQUALIFY LEECH TISHMAN ROBINSON BROG, PLLC AS COUNSEL TO CERTAIN DEFENDANTS**

Leech Tishman Robinson Brog, PLLC ("Leech Tishman") files this response ("Response") to the letter ("Position Statement") of the Office of the United States Trustee ("U.S. Trustee") regarding (i) the motion of Leech Tishman to withdraw as counsel ("Motion to Withdraw") to the post-confirmation debtors WB Bridge Hotel LLC ("WB Bridge") and 159 Broadway Member LLC ("159 Broadway" together with WB Bridge, the "Debtors") and (ii) the motion of Nat Wasserstein, the trustee of the WB Bridge Creditor Trust ("Creditor Trust Trustee") to disqualify Leech Tishman

as counsel to certain defendants ("Motion to Disqualify") in Adversary Proceeding No. 22-07059 ("Adversary Proceeding")[1], and responds as follows:

## Preliminary Statement[2]

1. After the March 23, 2023 hearing on the Motion to Withdraw and Motion to Disqualify ("March 23rd Hearing"), this Court offered the U.S. Trustee an opportunity to provide the Court with its position on the Motion to Withdraw and the Motion to Disqualify. On April 18, 2020, the U.S. Trustee filed its Position Statement. This is the Leech Tishman's response to the Position Statement ("Response").

2. The Position Statement incorrectly concludes that Leech Tishman should not be permitted to represent the Defendants (who the U.S. Trustee incorrectly believes are the Debtors' insiders) in the Adversary Proceeding.[3] The U.S. Trustee is wrong because (i) Leech Tishman is not representing any insiders of the Debtors in the Adversary Proceeding, (ii) its allegations about statements allegedly made by counsel that prompt its argument are unsupported by the March 23rd Hearing transcript, (iii) in analyzing the three-part test for successive representation, the U.S. Trustee makes conclusory allegations that there is a substantial relationship between the Debtors' bankruptcy cases (including

---

[1] This Response will be filed in both the main bankruptcy case and the Adversary Proceeding as it relates to both matters.

[2] Leech Tishman incorporates by references the facts and legal arguments asserted in its (i) Motion to Withdraw [ECF No. 190], (ii) reply to response to Creditor Trust Trustee's objection to Motion to Withdraw [ECF No. 198] and (iii) objection to Creditor Trust Trustee's Motion to Disqualify [Adv. Pro. ECF No. 29].

[3] Position Statement at p. 3. The U.S. Trustee also incorrectly stated that Leech Tishman should not be able to represent the Debtors in the Adversary Proceeding, even though they do not. Position Statement at p. 6.

2

preparing the schedules and statement of financial affairs) and the Adversary Proceeding without analyzing the facts and without providing any case law to support its conclusion, (iv) the U.S. Trustee (as well as counsel for the Creditor Trust Trustee) rebuts no case law cited by Leech Tishman that demonstrates that there is a distinction between representing the Debtors in their bankruptcy cases and representing third parties in a fraudulent conveyance litigation, and (v) no confidential information about fraudulent transfers was given by the Debtors to its counsel, and thus the Defendants received no advantage based on counsel's prior representation of the Debtors. Thus, the Court should deny the Motion to Disqualify because there is no trial taint based on the Debtors' counsels' actual conduct in the bankruptcy case and in the Adversary Proceeding.

3.  As for the Motion to Withdraw, while the Creditor Trust Trustee acknowledged at the March 23rd Hearing that the Motion to Withdraw should be granted if Leech Tishman's files are transferred to new counsel for the Debtor,[4] the U. S. Trustee officially took a "no position" position. While Leech Tishman disputes the U.S. Trustee's interpretations of the provisions of the Plan[5] and Confirmation Order, for the reasons set forth in its prior papers (which are incorporated here) and at the March 23rd Hearing, the Court should grant the Motion to Withdraw.

## Argument

### Motion to Disqualify Should Be Denied

---

[4] See March 23rd Hearing Transcript at p. 42.
[5] Capitalized terms not defined herein shall have the meaning ascribed to such term in the Motion to Withdraw.

3

4. There is no dispute that the three-part test for successive representation that the Court should analyze in determining whether Leech Tishman's representation of certain non-insider defendants[6] ("Defendants") in the Adversary Proceeding is proper is that an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues present in the new lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video, Inc. v. Inc. Vill of Valley Stream,* 409 F.3d 127, 133 (2d Cir. 2005) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). Thus, all three prongs of the test must be satisfied for there to be trial taint and for the Court to disqualify counsel.

5. The focus of the Court at the March 23rd Hearing and the Position Statement are the second and third prongs of the test. The U.S. Trustee asserted, without refuting the case law previously cited by Leech Tishman or citing any case law in support of its assertion, that "there is a substantial relationship between the Debtors' bankruptcy proceedings and the matters to be addressed in the Adversary

---

[6] Leech Tishman currently represents all of the defendants, except for six: (i) 159 Broadway I LLC (the Debtor's secured lender and Plan proponent), (ii) 159 Broadway Mezz LLC (Debtors' mezzanine lender), (iii) B&A Marine Co (unknown party), (iv) Brooklyn Air Conditioning, Inc (unknown party), (v) 159 Broadway Member LLC ( a Debtor, which was dismissed from the Adversary Proceeding), and (vi) Cornell 159 LLC.

4

Proceedings [sic]." Position Statement at 3. Instead, the U.S. Trustee relied on Rule 1.9 – "Duties to a Former Client", which provides in part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

This New York State Rule is identical to Rule 1.9 of the Model Rules of Professional Conduct. *See Peterson v. Sanches (In re Mack Indus., Ltd.),* 606 B.R. 313, 324 (Bankr. N.D. Ill. 2019) ("Mack") (quoting Model Rule of Prof'l Conduct 1.9 (2018)). This rule does not preclude Leech Tishman from representing the Defendants because the test for "substantially related matters" is not met. *See Mack,* 606 B.R. at 324-325 (Rule 1.9 "does not preclude [counsel] from representing the adversary defendants for at least two reasons: (1) the [chapter 7] trustee and the estate are not [counsel's] former client so the rule does not apply, and (2) the test for 'substantially related' matters is not met in any event" where information relevant to the issues in the adversary proceeding was discoverable, and there was not a risk that confidential factual information as would normally have been obtained in attorney's prior representation of debtors would materially advance the defendants' positions in the adversary proceedings). The prepetition transfers alleged in the schedule to the complaint took place between November 8, 2017 and November 25, 2020, before Robinson Brog's retention on or about December 17, 2020.[7]

---

[7] The Creditor Trust Trustee is also seeking $200 in post-petition transfers.

5

6.      For purposes of Rule 1.9, two matters are "substantially related" under Rule 1.9 when (1) the two matters involve the same transaction or legal dispute, or (2) when there is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. *Mack*, 606 B.R. at 324 (citation omitted).[8] In fact, in "honoring" the application of the "substantial relationship" test, the Second Circuit stated that in granting disqualification, there must be a "showing that the relationship between issues in the prior and present case is 'patently clear.'" *Gov't of India v. Cook Indus., Inc.,* 569 F.2d at 739-740. The Second Circuit further stated that "**disqualification has been granted or approved . . . only when the issues involved have been 'identical' or 'essentially the same.'**" *Id.* at 740 (emphasis added). "Under the first test for 'substantially related', to participate in the same transaction, the lawyer must have had a *direct* involvement in the *specific* transaction that is the subject of a subsequent representation." *Mack,* 606 B.R. at 324. (citation omitted) (emphasis added). The test is not met here. Neither Leech Tishman nor Robinson Brog represented either Debtor pre-petition when the purported pre-petition transfers that are the subjects of the Adversary Proceeding took place.

---

[8] "In interpreting the Rules of Professional Conduct, federal courts may rely on the specific guidance offered in the commentary." *Watkins v. Trans Union, LLC,* 869 F.3d at 519. "The commentary to Rule 1.9 defines two matters as 'substantially related' when two matters 'involve the same transaction or legal dispute' or when there is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.* at 520. (citation omitted).

6

4875-1601-8528, v. 5

7. Moreover, the U.S. Trustee conflates and confuses the requirements for counsel to prepare the Debtors' schedules and Statement of Financial Affairs ("SOFA") with those of analyzing pre-petition fraudulent transfers. See Position Statement at p. 4 (U.S. Trustee explaining requirements to list prepetition transfers for SOFAs and then stating that it would be a dereliction of duty to not discuss and review prepetition transfers made). The preparation of the SOFA and Schedules are separate tasks from a fraudulent transfer analysis and are not substantially related within the Second Circuit standard as the issues are neither identical nor essentially the same.

8. As the Trustee acknowledges, the SOFAs require disclosure of (i) payments made within 90 days prior to the filing of the bankruptcy case, (ii) payments to insiders within one year of the filing, (iii) transfers to settled trusts within 10 years before the bankruptcy filing and (iv) transfers made out of the ordinary course within two years of the filing. Of these four disclosures, the SOFAs reflect no payments or transfers by WB Bridge and one payment to an insider by 159 Broadway in response to item number 4 on the SOFA. The SOFAs require the Debtors to list certain transfers. Here, the Debtors' counsel inquired to obtain the necessary information to complete the schedules and SOFAs and relied on the information provided to it by the Debtors and their agents. It was the Debtors' responsibility, not their counsel, to ensure that their schedules were accurate and complete. *In re Loganbill*, 554 B.R. 871, 879 (Bankr W.D. Mo. 2016) ("It was the Debtors' responsibility, not their attorney's, to ensure that those Schedules were

accurate and complete."). Thus, counsel could rely on the information that the Debtors and their agents provided to it, including the list of any transfers or payments that were required to be included in the SOFAs and there were no red-flags suggesting more was required.

9. In contrast, there is no requirement of a debtors' counsel to conduct a fraudulent conveyance analysis in connection with filing a bankruptcy case and contrary to the U.S. Trustee's contentions, not performing such an analysis is neither a violation of any rule nor a dereliction of duties by Debtors' counsel.

10. Determining whether there was a fraudulent conveyance requires analysis. For instance, the First Claim for Relief under D.C.L. §276 and Fifth Claim for relief under section 548(a)(1)(A) of the Bankruptcy Code each contain a fraudulent intent requirement, which cannot be determined merely through a list of transfers/payments. Counsel needs to analyze the transaction and be able to allege with some specificity the acts constituting the fraud and the badges of fraud that establish an actual intent to defraud. That is not substantially related to the important but administrative task of obtaining the Debtors' information to prepare the schedules and SOFAs. For constructive fraudulent conveyance causes of action, counsel would need to determine whether the transferee received less than reasonably equivalent value or whether the transfer was made without "fair consideration." This also requires an analysis of the transaction, which was not done in connection with preparing the Debtors' schedules and SOFAs. Thus, the second factor – the existence of a substantial relationship reflecting identical issues

between the two undertakings—has not been established. This is especially the case against the backdrop that disqualification motions are tactical and eviscerate the client's right to select counsel. These policy considerations are absent from the U.S. Trustee's submission.

11. The third factor is whether Leech Tishman had access to, or was likely to have had access to, relevant privileged information during its prior representation of the client. The U.S. Trustee asserts that "it seems more likely than not that it had such information" without any evidence to support its claim. See Position Statement at p. 3.

12. As there is absolutely no evidence or even a suggestion of any specific confidential information having passed from the Debtors to counsel to the Defendants, the U.S. Trustee mistakenly relies on *DeFazio v. Wallis*, 459 F. Supp.2d 159 (E.D.N.Y. 2006) for the proposition that courts in this circuit do not require a specific showing that confidences were passed to counsel if the former action and this action are substantially related. This case does not apply because the facts of this dispute do not demonstrate that counsel's representation of the Debtors and their representation of the Defendants in the Adversary Proceeding are substantially related.

13. As a result, the U. S Trustee must rely on counsel having access to privileged information and there was none. The test focuses on whether there is a substantial risk that the lawyer will use confidential information obtained in the previous relationship to materially advance the new client's interests. *Mack*, 313

9

B.R. at 324-325. "Under this standard, even a lawyer who repeatedly handled a specific type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.'" *Id.* at 325 (citation omitted). "In addition, information disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying." *Id.* (citation omitted); see *Watkins v. Trans Union, LLC*, 869 F.3d at 520 ("The commentary tells us that information 'disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying.'") "This includes any information that can be obtained in discovery from the former client." *Mack,* 313 B.R. at 325. "Thus, an attorney will not be disqualified when he had access to information relevant to the current litigation when that information is discoverable in litigation." *Id.* "Similarly, general knowledge of a client's policies and practices ordinarily will not preclude a subsequent representation." *Id.* Applying these principles, the Seventh Circuit in *Watkins v. Trans Union, LLC,* 869 F.3d 514, refused to disqualify a lawyer who was adverse to a client that he represented for five years on the exact type of issue involved in a new lawsuit.

14. The Courts analyze all the factors to determine whether there is trial taint. The U.S. Trustee asserts that (i) in the Second Circuit "disqualification is called for only where the conduct tends to taint the underlying trial"[9] and (ii) generally, where the three-part test is satisfied, trial taint is established.[10]

---

[9] Position Statement at p. 4 (citing *Bd. of Ed. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir 1979)).
[10] Position Statement at P. 4 (citing *Hempstead Video*, 409 F.3d at 133).

Although all three parts of the test must be satisfied under the test, as detailed below, the Second Circuit looks at the actual conduct of the attorney to determine whether that conduct taints the trial. *See In re Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246-1247 (2d Cir. 1979).

15.   In line with the focus on the attorney's actual conduct, disqualification of counsel is "warranted only in situations where violations of the Code of Professional Responsibility…pose a significant risk of trial taint." *Bulkmatic Transp. Co., Inc. v. Pappas,* 2001 WL 504841, at *2 (S.D.N.Y. 2001) (citation omitted); *John Wiley & Sons, Inc. v. Book Dog Books, Inc*, 126 F. Supp 3d at 419 ("Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'").

16.   In *Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979), the Second Circuit stated that "with rare exceptions disqualification has been ordered only in essentially two kinds of cases:

> (1)  where an attorney's conflict of interest is in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of the client . . .  or more commonly
> (2)  where an attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example in violations of Canons 4 and 9, thus giving the present client an unfair advantage. (citations omitted).[11]

---

[11] The *Nyquest* Court at footnotes 5 through 7 summarized the canons as follows:
Canon 5 provides: A lawyer should exercise independent judgment on behalf of a client.
Canon 9 provides: a lawyer should avoid even the appearance of professional impropriety.
Canon 4 provides: A lawyer should preserve the confidences and secrets of a client.

11

*Nyquist*, 590 F.2d at 1246. The Second Circuit continued by stating:

> Weighing the needs of efficient judicial administration against the potential advantage of immediate preventive measures, we believe that unless an attorney's conduct tends to 'taint the underlying trial' … by disturbing the balance of the presentations on one of the two ways indicated above, courts should be quite hesitant to disqualify an attorney.

*Id.* In *Nyquist,* in holding that disqualification was inappropriate, the court stated that it believes that "when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest of cases." *Id.* at 1247. In the concurring opinion, Circuit Judge Mansfield stated:

> I concur in the view that a federal court should not disqualify an attorney on ethical grounds from representing a party in a pending lawsuit in the absence of a reasonable basis for believing that his or her unprofessional conduct may affect the outcome. An 'appearance of impropriety' on an attorney's part would rarely have this effect.

*Id.* at 1247. The above shows that Second Circuit's focuses on the actual conduct of the attorney at issue and the impact at trial, and thus that the standard is more than just mere access to confidential information.

17. Here, there is no evidence of trial taint. The arguments made are speculative and beyond inchoate. At the March 23rd Hearing, counsel to the Creditor Trust Trustee speculated that if counsel has information about the transfers, about when the debtor was solvent, who the debtor's creditors were at any specific point in time, whether there was fair consideration, whether there was reasonably equivalent value given in exchange for the transfer, all of that

12

information was derived as Debtors' counsel in the Chapter 11 case and that information is what creates the trial taint. March 23rd Hearing Transcript at p. 57. This argument is wrong and misleading for several reasons. First, the argument is speculative because the information that Debtors' counsel had as of the Petition Date was who were the creditors (which is public information and set forth in the schedules and claims docket). Second, the Debtors' books and records were turned over to counsel for the Creditor Trust Trustee, and any information that Debtors' counsel may have had access to, the Creditor Trust Trustee's counsel now has access to. Third, all this information pertaining to fraudulent conveyance actions can be obtained in discovery (through document requests and depositions) and therefore none of that information is confidential information. Fourth, even if was confidential information, which it was not, without the matters being substantially related, there is no trial taint. Contrary to argument by counsel at the March 23rd Hearing, trial taint occurs when all three of the prongs in the test are met and the actual conduct of the attorney taints the trial, not just when there is access to information. The reason is simple. There can be no trial taint if counsel was not involved in substantially related matters because courts are concerned with actual confidential information given to counsel and how that impacts counsel's second representation, and that is relevant only if the matters are substantially related.

18. As neither the U.S. Trustee nor the Creditor Trust Trustee have satisfied their high burden in establishing the second or third prongs of the test (although both must be proved), no trial taint prevents Leech Tishman from

representing the Defendants in the Adversary Proceeding. Even if the three prongs of the test were satisfied (which they were not), there was no conduct by counsel that would taint the trial and thus the Court should not grant the Motion to Disqualify.

19. The U.S. Trustee also asserts that *Hempstead Video* holds only that even if the test is not satisfied, counsel may still be disqualified if the record supports a finding of disqualifying taint. Position Statement at p. 4. Contrary to the U.S. Trustee's contention, the case does not stand for this proposition in a successive representation matter. The three part test must be satisfied and the attorneys conduct must taint the trial. But even if the U.S. Trustee were correct in its contention (which it isn't), the facts here do not support a finding of trial taint as there no conduct by counsel that would taint the trial.

Courts Are Liberal in Allowing Counsel to
Withdraw When There is Potential Conflict

20. The U.S. Trustee contends that because Leech Tishman filed the motion to dismiss the complaint in the Adversary Proceeding on January 20th, there appears to be a conflict of interest and violation of Rule 1.7 of the New York Code of Professional Conduct. Position Statement at p. 4. Although the Court's "decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and the state disciplinary rules…such rules merely provide guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video,* 409 F.2d at 132. "It is only warranted where 'an attorney's conduct tends to taint the underlying trial." *Id.* at 133. Here, there

14

has been no actual conduct on the part of Leech Tishman that would tend to taint the trial.

21. Moreover, as the Court acknowledged at the March 23rd Hearing, courts are very liberal in allowing counsel to withdraw from representing a debtor to prevent the issue of concurrent representation. *See, e.g., In re Allboro Waterproofing Corp.,* 224 B.R. 286, 289 (Bankr. E.D.N.Y. 1998) (court denied the Chapter 7 Trustee's motion to disqualify counsel in connection with its representation of the defendants in the adversary proceeding in that case and agreed with counsel's suggestion to withdraw as counsel to the Debtor, holding that the appropriate remedy was to allow the law firm to voluntarily withdraw from representing the debtor and continue to represent counsel to the defendants in the adversary proceedings.).

22. Thus, the Court should grant the Motion to Withdraw.

Leech Tishman Did Not "Game the System" and the Court May Rule in
<u>Leech Tishman's Favor Without Providing Any Roadmap For Future Cases</u>

23. The U.S. Trustee, without any meaningful analysis, echoes the Court's concern that a debtor in another case in the future not use the Bankruptcy Code and Bankruptcy Rules to "game the system." Leech Tishman did not game the system here and by making appropriate findings, for example, that there was no "substantial relationship," the Court's decision would be narrow and not present a roadmap, consistent with Second Circuit guidelines:

> when dealing with ethical principles, … we cannot paint
> with broad strokes. The lines are fine and must be so marked.
> Guideposts can be established when virgin ground is being

15

>     explored, and the conclusion in a particular case can be reached only
>     after painstaking analysis of the facts and precise application
>     of precedent.

*DeFazio v. Wallis*, 459 F. Supp. 2d at 163 (citing *Fund of Funds, Ltd. V. Arthur Anderson & Co.,* 567 F.2d 225, 227 (2d Cir. 1977)).

24. Here, the Court should make its ruling based on the law and the uncontroverted facts of the case, which demonstrates that the second and third prongs of the test were not established. The Court should find that the cases are not substantially related because the Debtors' counsel prepared the schedules but did not conduct a fraudulent conveyance analysis and had no access to (and more importantly, did not use) confidential information. Moreover, at the March 23rd Hearing, the Court was concerned about a taint in the bankruptcy process where counsel might coordinate with a debtor and its principals that it would not conduct certain work so that if there is litigation post-confirmation, then it will represent equity rather than the debtor. The Court does not have to and should not speculate about what may happen in some future case with some other facts that are not before the Court. The Court should decide these motions based on the facts here and not speculation and "what ifs" asserted by the Creditor Trust Trustee and U.S. Trustee. In this case, there were no such discussions between counsel and the Debtors and their equity holders regarding any fraudulent transfer analysis.

25. Moreover, the plan that was confirmed here was a creditor plan rather than a debtor plan. This is relevant because if it was a debtor plan, then counsel in that case would likely have performed an avoidance claims analysis. But it was a

16

creditor plan with the role of analyzing avoidance claims and commencing actions relegated to the Creditor Trust Trustee. That distinguishes this case from other Chapter 11 cases. Based on these facts, there is no evidence of trial taint and this Court's decision based on these facts would not provide a roadmap for other cases as it would be limited to the factual scenario presented.

26. Finally, the issue was raised that in the Debtor's Application for Authorization to Retain Counsel, the Debtors stated that Robinson Brog will not, at any time, represent any other entity in connection with this case. The purpose of that statement was that counsel will only be representing the Debtors during the case while it is retained by the Debtors. In the event the Court grants the Motion to Withdraw, then Leech Tishman no longer represents the Debtors and may represent the Defendants in the Adversary Proceeding.

The U.S. Trustee Based Its Analysis, In Part, On Incorrect Assumptions
And Untrue Statements That Are Not Part of the Record

27. Sprinkled throughout the Position Statement are untrue statements that are neither based in fact nor on the record at the March 23rd Hearing. It is unclear if these misconceptions clouded the U.S. Trustee's position or not, but Leech Tishman seeks to correct the record.

28. The U.S. Trustee asserts, without any basis, that "[t]he Creditor Trust has creditably alleged that the Defendants are insiders of the Debtors" and that that "Leech Tishman … now seeks to represent insiders of the Debtors." Position Statement at p. 3. Contrary to the Creditor Trust Trustee's assertion and the U.S.

17

Trustee's reliance on them, there is no basis for this contention. WB Bridge's SOFA reflects that the 100% member of WB Bridge is 159 Broadway, the other debtor in these jointly administered cases. 159 Broadway's SOFAs lists Cornell 159 LLC as a 93.75% member, MD Friedman Family Trust as a 3.125% member and Neil Einhorn Family 2017 Trust as a 3.125% member. Moreover, Isaac Hager has no equity interest in either Debtor or the entities that own the Debtor. Thus, the only defendant in the Adversary Proceeding that is an insider is Cornell 159 LLC, which has other counsel, Scott Steinberg of Meltzer, Lippe, Goldstein & Breitstone, LLP, to represent it in the Adversary Proceeding. Thus, the Defendants that Leech Tishman seeks to represent in the Adversary Proceeding are not insiders.

29.    The U.S. Trustee also asserts that it finds statements that Leech Tishman made that the firm had "'no communications with the Debtors concerning pre-petition transfers' to be incredible"[12] without citing to where the statement was made. It cannot do so because this statement was never made. The representations that were made were that there was "no *confidential* information regarding these alleged transactions that went from the debtor to counsel to the [D]efendants." March 23rd Hearing Transcript at p. 34: 9-14[13] (emphasis added). See March 23rd Hearing Transcript at p. 30:23- 31:1. ("We represent to the Court that neither Robinson Brog nor Leech Tishman obtained any confidential information regarding

---

[12] Position Statement at p. 3.
[13] A copy of the March 23rd Hearing Transcript was attached to the U.S. Trustee's Position Statement.

18

4875-1601-8528, v. 5

the alleged transactions at issue.") These representations are substantially different from the U.S. Trustee's allegations.

30. Similarly, the U.S. Trustee mistakenly accepted (and then asserted) the untrue statement made by counsel for the Creditor Trust Trustee at the March 23rd Hearing when counsel misrepresented the statements made by Leech Tishman. Creditor Trust Trustee's counsel incorrectly stated that the representation by Leech Tishman "that they did nothing with respect to pre-petition transfers is belied by their own filings." March 23rd Hearing Transcript at 41:5-7; Position Statement at p. 4 ("Thus, counsel's statements are belied by the documentary evidence on file with the Court."). Leech Tishman stated that the firm did not conduct a fraudulent transfer analysis; it did not state that it did nothing with respect to the pre-petition transfers.

## Motion to Withdraw

31. Although the U.S. Trustee asserts that it takes no position on the Motion to Withdraw, at the March 23rd Hearing, the Creditor Trust Trustee stated that it would not oppose the Motion to Withdraw if all the Leech Tishman files are provided to Mr, Shafferman. March 23rd Hearing Transcript at p. 42. Based on Leech Tishman's prior papers and this acknowledgment, the Court should grant the Motion to Withdraw.[14]

---

[14] Notwithstanding its "no position" position, the U. S. Trustee contends that the Plan and Confirmation Order provides the Court with post-confirmation jurisdiction regarding the discharge of Debtors' counsel. Specifically, it contends that paragraph 24 of the Confirmation Order provides that the Court shall retain jurisdiction of the case and proceedings or matters therein under the provisions of the Bankruptcy Code; however, the relevant provision at issue is Local Bankruptcy Rule 2090-1(e), which is not a provision of the Bankruptcy Code. Similarly, the U.S. Trustee mistakenly asserts that because Leech Tishman was retained by an order of the Court, section

19

32.     Based on the above, Leech Tishman's Motion to Withdraw should be granted and the Creditor Trust Trustee's Motion to Disqualify should be denied.

Dated: New York, New York
        May 2, 2023

                                             LEECH TISHMAN ROBINSON BROG, PLLC
                                             875 Third Avenue, 9th Floor
                                             New York, New York 10022
                                             Tel. No.: 212-603-6300

                                             By:/s/ Fred B. Ringel
                                                  Fred B. Ringel
                                                  William A. Rome
                                                  Steven B. Eichel
                                             *Withdrawing Counsel to the Debtors*

---

12.1(h) of the Plan provides the Court with jurisdiction over the discharge of the Debtors' counsel citing the Local Bankruptcy Rule, but no case law. Under the U.S. Trustee's theory, all counsel would need a provision in a final decree discharging it as counsel of record for its particular debtor. Leech Tishman relies on its briefing in this case on this issue and understands the Court's position stated at the March 23rd Hearing.

20