# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


IN RE:                  .    Case No. 20-23288(RDD)
                        .
                        .
WB BRIDGE HOTEL, LLC,   .
                        .
                        .
        Debtor.         .
. . . . . . . . . . . ..
NAT WASSERSTEIN, AS     .    Adv. Case No. 22-07059(KYP)
TRUSTEE OF THE WB BRIDGE .
CREDITOR,               .
                        .
        Plaintiff,      .
                        .
        v.              .    300 Quarropas Street
                        .    Room 147
11 APPLE, LLC, et al.,  .    White Plains, NY 10601
                        .
        Defendants.     .    August 29, 2024
. . . . . . . . . . . ..      10:01 a.m.


        TRANSCRIPT OF ADVERSARY PROCEEDING: 22-07059-kyp
    WASSERSTEIN, AS TRUSTEE OF THE WB BRIDGE CREDITOR V.
                11 APPLE LLC ET AL
            BEFORE THE HONORABLE KYU Y. PAEK
            UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Plaintiff:          Rimon P.C.
                            By:  DAVID J. MAHONEY, ESQ.
                            100 Jericho Quadrangle, Suite 300
                            Jericho, NY 11753



 Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

            J&J COURT TRANSCRIBERS, INC.
                268 Evergreen Avenue
            Hamilton, New Jersey 08619
            E-mail:  jjcourt@jjcourt.com

        (609) 586-2311      Fax No. (609) 587-3599

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 3 of 27

2

TELEPHONIC APPEARANCES (Cont'd):

For the Defendants:              Meltzer Lippe Goldstein &
                                  Breitstone, LLP
                                 By:  SCOTT A. STEINBERG, ESQ.
                                 190 Willis Avenue
                                 Mineola, NY 11501

                        - - -

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 4 of 27

3

1          THE COURT:  Wasserstein versus 11 Apple, LLC,

2    Adversary Proceeding Number 22-07059.

3          MR. STEINBERG:  Good morning, Your Honor.  Scott

4    Steinberg from Meltzer, Lippe, Goldstein & Breitstone.  We are

5    counsel for the defendants identified in Footnote 1 to our

6    memorandum of law in support of the motion to dismiss the

7    complaint.

8          MR. MAHONEY:  Good morning, Your Honor.  My name is

9    David Mahoney from RIMON P.C.  We are counsel to Nat

10   Wasserstein in his capacity as the Trustee of the WB Bridge

11   Creditor Trust.

12         THE COURT:  Mr. Steinberg, would you mind turning on

13   your camera?

14         MR. STEINBERG:  Yes.

15         THE COURT:  Okay.

16         MR. STEINBERG:  I apologize, Your Honor.

17         THE COURT:  No problem.  Okay.  So, now that these

18   papers are a little dated, I know there was a big dispute about

19   disqualification in this case.

20         But I did see a letter filed by defense counsel, the

21   new defense counsel stating that they would rely on the papers

22   filed by the predecessor counsel.

23         So, I'm ready to hear defendant's motion.  So go

24   ahead.

25         MR. STEINBERG:  Good morning, Your Honor.  This

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 5 of 27

4

1  action arises out of the bankruptcy case of 159 Broadway and WB
2  Bridge Hotel which involved the construction and development of
3  a hotel at 159 Broadway.
4          Under the confirmed plan a trustee of the creditor
5  trust was appointed and the trustee is charged with the
6  responsibility of commencing and prosecuting fraudulent
7  conveyance and other avoidance actions amongst other claims,
8  Your Honor.
9          Your Honor, the present action is against 48,
10  initially against 48 defendants.  I believe several have been
11  dismissed out since the complaint was filed.  And it involves
12  alleged, 66 alleged transfers to the various defendants which
13  are identified, the transfers are identified on Schedule A to
14  the complaint.
15          But the complaint does not contain one single
16  allegation of what any individual defendant received, nor is
17  there any allegations as to what transfers were made to the
18  particular defendants in question.
19          This certainly does not put any defendant on notice
20  as to what it allegedly received or did wrong.  Suffice it to
21  say there is not one ounce of meat on the bones which
22  constitute this complaint.  Rather the causes of action
23  asserted I think as you'll see when you read the complaint,
24  Your Honor, are merely formulated restatements of what the
25  elements of the statutes require.

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29  2024 Transcript of Adversary Proceeding   Pg 6 of 27

5

1    Basically, the complaint has but two paragraphs

2 concerning the transfers.  Paragraph 69 alleges that defendant

3 Hager caused the debtor to make the transfers and Paragraph 70

4 alleges that the transfers were made for the benefit of the

5 defendants.  Doesn't explain how, what, why, or in what manner

6 those facts, those allegations are made.

7    For those particular reasons, Your Honor, and others

8 which I will elaborate on with Your Honor's permission, the

9 complaint should be dismissed pursuant to Rule 12(b)(6) for

10 failure to state a cause of action and for failure to plead

11 fraud with particularity pursuant to Rule 9(b).  And to the

12 extent Rule 8(a) is applicable, for failure to plead even

13 minimal recitation of facts necessary to put the respective

14 defendants on notice of the particular claims against them.

15    In addition, the complaint should be dismissed for

16 failure to plead and, well, at least Counts 1 through 6, Your

17 Honor, should be dismissed for failure to plead whether the

18 particular transferees are initial transferees, immediate

19 transferees, or mediate transferees.  And the statement that

20 they are transferees is by itself insufficient to satisfy that

21 pleading requirement.

22    In short, Your Honor, I believe this is a case of sue

23 first and find out the facts later.  Whether it was done

24 because of an impending statute of limitations issue or for

25 whatever reason, we are in essence telling the defendants at

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 7 of 27

6

1  this point you are guilty until you prove your innocence.  And

2  that's not the way pleadings should be interpreted or applied

3  either in Bankruptcy Court or any other Federal Court.

4          Your Honor, I'd like to start with just a brief

5  discussion of what the standards of a 12(b)(6) motion are, and

6  the Supreme Court in <u>Ashcroft v. Iqbal</u> and <u>Bell Atlantic v.</u>

7  <u>Twombly</u> held that to survive a motion to dismiss a complaint

8  must contain sufficient factual matter to state a claim for

9  relief that is plausible on its face.

10          Plausibility has been interpreted to mean pleading

11  facts that allow the Court to draw a reasonable inference that

12  a defendant is liable for the misconduct alleged.

13          And, finally, Your Honor, a pleading cannot merely

14  recite the elements of a cause of action or conclusory

15  statements as a basis for relief.  It needs to plead facts

16  which put a defendant on notice of the claims and the alleged

17  wrongdoing and allow the defendants to respond to those

18  allegations.

19          Here the complaint is beyond threadbare.  Sixty-six

20  alleged transfers, not one transferee identified.  No role of

21  factual allegations as to the transfers whatsoever except that

22  they were made on a date in a certain amount.  And that

23  information is contained in Schedule A to the complaint.

24          There is nothing in the complaint that would go so

25  far as to satisfy <u>Iqbal</u> or <u>Twombly</u> analysis to the extent that

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 8 of 27

7

1   a threadbare complaint even requires the Court to get to that

2   analysis.  I don't think it does in this case.  I don't think

3   we have the bare minimum necessary to determine or the

4   plausibility even is required.

5          With Your Honor's permission I'd like to briefly

6   address the seven causes of action asserted in the complaint.

7   One --

8          THE COURT:  Well you can sort of group them a little

9   bit, Mr. Steinberg.  And I don't want to cut you off or

10  anything like that, but you have sort of the three buckets,

11  right?  The intentional fraud, constructive fraud, and the

12  common law claim, the unjust enrichment claim.

13         MR. STEINBERG:  I'll do that, Your Honor.

14         THE COURT:  Okay.

15         MR. STEINBERG:  With respect to the intentional fraud

16  claim, the first and fifth causes of action here, they seek to

17  invalidate transfers based on you know hindering, delaying, or

18  defrauding an entity, the traditional language set forth in

19  Sections 548 and the DCL.

20         Because these statutes have a fraudulent intent

21  requirement, Rule 9(b) requires that these claims be pled with

22  specificity.  Again, one need only go so far as to note that

23  there's no information in the complaint as to which defendants

24  are transferees and what transfers were made to each particular

25  defendant.  Respectfully, Your Honor, that omission is fatal.

22-07059-kyp    Doc 55-2    Filed 01/07/25    Entered 01/07/25 16:21:11    Exhibit A -
August 29    2024 Transcript of Adversary Proceeding    Pg 9 of 27

8

1    It is a complaint cannot be deemed specific if it doesn't

2    identify which transferee received property.

3            In addition to the grounds for dismissing the

4    intentional fraudulent conveyance claims, those claims are also

5    under Rule 9(b), Your Honor, for failure to plead with

6    specificity, any acts constituting fraud.  The heightened

7    pleading requirements of 9(b) are there for a reason.  If

8    you're going to plead fraud, you need to tell the defendant

9    what he did wrong so as to allow the defendant to respond.

10   It's not up to the defendant here to take post-action discovery

11   to find out what he did wrong and all of the other elements of

12   a cause of action.

13           The defendant's acts or conduct, I mean the

14   conclusory statements that the defendant's acts or conduct was

15   fraudulent or deceptive simply don't make the cut.  You can't

16   just simply rest on those conclusory statements.  At a minimum

17   the complaint needs to allege facts that give rise to a strong

18   inference.  Strong, as we've cited the case law in our papers

19   here as determined by the Court, a strong inference of

20   fraudulent intent.  Here there are no facts on which any

21   inference can be gleaned, let alone a strong inference.

22           While the complaint attempts to allege badges of

23   fraud because we, as the Court knows actual intent is difficult

24   to prove, and we don't suggest that that is the single sole way

25   of proving a fraud.  Badges of fraud can be relied on by a

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 10 of 27

9

1  trustee in situations like this.

2          But while the complaint attempts to allege badges of

3  fraud, most if not all of the badges have not been shown to be

4  present here.  There are simply no allegations as to more than

5  one badge of fraud here and as such plaintiff has failed to

6  allege sufficient badges to establish an inference of actual

7  fraudulent intent of the transferor.

8          With respect to the constructive fraudulent

9  conveyance claims, Your Honor, that's the second, third, and

10 fourth claims, those claims seek recovery under DCL 273, 274,

11 and 275, and 548(a)(1)(B) of the Bankruptcy Code.

12          Just as a footnote, Your Honor, I note that it was

13 difficult in the complaint to determine which version of the

14 DCL applied because there were transfers that pre-date the

15 repeal of certain of the DCL statutes where the old statute

16 applied.  So the numbering I believe in the complaint may be a

17 little off, but the underlying facts are not affected here and

18 we believe that the analysis is the same.

19          Specifically, Your Honor, as with the intentional

20 fraudulent conveyance claims, these claims fail to identify the

21 transferees of the respective transfers and are subject to

22 dismissal for the same reasons.

23          In <u>Line B</u> (phonetic) which has been applied in

24 various cases in the Second Circuit, to which there is

25 admittedly disagreement as to whether Rule 8(a) or Rule 9(b)

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 11 of 27

10

1  should be applied in various circumstances to constructive

2  fraudulent conveyance claims, fraudulent conveyance claims

3  should be, these claims should be dismissed for the same

4  reasons as the intentional fraudulent conveyance claims.

5       The claims here, the constructive fraudulent

6  conveyance, are sounded in a fraud, an alleged fraud committed

7  by the debtor or Mr. Hager in particular as he is alleged to be

8  the person in control.  For that reason we believe the

9  heightened pleading requirement should be observed here.

10      But even if the Court were to conclude that 8(a)

11  applies, failure to identify the transferees is even fatal

12  under the more relaxed Rule 8(a) standard which requires at a

13  minimum that the complaint give each defendant a fair notice of

14  what the plaintiff's claim is and the grounds upon which the

15  claims are asserted.

16      This is a bare bones complaint.  It does not give any

17  particular defendant fair notice of what the claims against it

18  are.

19      The complaint in the second, third, and fourth causes

20  of action, also constructive fraudulent conveyance claims, Your

21  Honor, fails to allege that the transfers were made with a lack

22  of good faith.  That is specifically required by Section 272 of

23  the DCL which I don't believe plaintiff cites either in the

24  complaint or in its opposition.

25      The failure to allege, when alleging that lack of

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 12 of 27

11

1  fair consideration, one must allege under DCL 272 that the

2  complaint, that the transfers were made in the absence or

3  without good faith.  That's not done here and we believe that,

4  again, that omission is fatal.

5          In addition to dismissal of the first causes of

6  action which would be the intentional fraud and the

7  constructive fraud claims, Your Honor, we believe the first,

8  second, third, fourth, fifth, and sixth, basically all claims

9  except the unjust enrichment claim, should be dismissed because

10  they do not allege which defendants were initial, mediate, or

11  immediate transferees.

12          That allegation is required under Sections 550 and

13  551 of the Bankruptcy Code.  Again, it's not for the debtor

14  it's, I'm sorry, it's not for the defendant to figure out these

15  facts.  They have to be pled to put a defendant on proper

16  notice of what the claims against it are.

17          Simply alleging that the transfers were made to or

18  for the benefit of the defendants is insufficient, especially

19  in the case where there are 48 alleged transferees, 48

20  defendants.  Again, trying to determine who got what and when

21  they got it and in what capacity they received it, whether as

22  an initial transferee, as a mere conduit is not the defendant's

23  responsibility here.  As such, these claims should likewise be

24  dismissed.

25          Finally, Your Honor, with respect to the unjust

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 13 of 27

12

1   enrichment claim, that's basically a restatement here or a

2   recitation of all the elements that cannot be proved, that the

3   complaint fails to establish with respect to the fraudulent

4   conveyance claims.

5           Unjust enrichment isn't a catchall, it's to be used

6   on when there's no contract here.  It's not to be used when

7   there are statutory causes of action that can be alleged and

8   allegedly proven by facts.

9           And I don't think a whole lot more needs to be said

10  other than if you look at the exact allegations of the unjust

11  enrichment cause of action they, again, they are just bare

12  legal conclusions without asserting even one fact in support.

13          Finally, Your Honor, the defendants, the movants here

14  have alternatively sought a request that a more definitive

15  statement should be filed to the extent the Court believes that

16  the trustee deserves the benefit of the doubt with respect to

17  any of these causes of actions.

18          And at this point, Your Honor, I would ask if Your

19  Honor has any questions or would like me to further elaborate

20  on any point.

21          THE COURT:  Mr. Steinberg, you in the motion asked

22  for a more definitive statement from the plaintiff.  Do you

23  oppose the branch of the opposition seeking leave to amend

24  under Rule 15?

25          MR. STEINBERG:  I do, Your Honor.  The plaintiff has

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 14 of 27

13

1  had plenty of time to do its investigation here.  It didn't

2  take any examinations prior to filing the complaint.  Documents

3  were turned over to the plaintiff.  Bank statements were

4  provided.  It could have offered a tolling agreement.  It could

5  have sought to extend the statute of limitations.  It did

6  neither or nothing in that regard.

7          And I don't think we should be put to the test of

8  having to incur the expense of a motion to dismiss only to have

9  the plaintiff come back and say I'll try better this time,

10  Judge.

11          THE COURT:  Understood.

12          MR. STEINBERG:  That's not the purpose of an

13  amendment.

14          THE COURT:  Understood.

15          MR. STEINBERG:  To a complaint.

16          THE COURT:  Okay.  Mr. Mahoney.

17          MR. MAHONEY:  Good morning, Your Honor.  David

18  Mahoney for the trustee.

19          Your Honor, it's undisputed that the trustee has

20  alleged the date of every single transfer he seeks to avoid and

21  recover.  It's undisputed that he asserts the amount of every

22  transfer he seeks to avoid and recover.  It is undisputed that

23  the trustee has alleged that those transfers were made either

24  to or for the benefit of each of the moving defendants.

25          And as far as whether or not those allegations put

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 15 of 27

14

1   each of the individual moving defendants on notice, we submit

2   that it does.  If you are to take any single one of the moving

3   defendants and have them represented by their own counsel, each

4   individual defendant would be on notice as to the date it is

5   alleged to have received either a transfer or the benefit of a

6   transfer and the amount of the transfer it is alleged to have

7   received or received the benefit of.

8           Each defendant can respond to the trustee's complaint

9   on its own.  If in fact each of these defendants are

10  independent of each other and if in fact each of these

11  defendants has its own corporate identity, its own corporate

12  formalities, its own individual existence, it will be able to,

13  based on the facts alleged in this complaint, respond to

14  whether or not it received either a transfer or the benefit of

15  a transfer on all 66 of the transfers identified.

16          THE COURT:  Mr. Mahoney, if I may.  Do you dispute

17  that the actual fraud claims require the heightened pleading

18  standard under Rule 9(b)?

19          MR. MAHONEY:  I do not dispute that that is the

20  standard under Rule 9(b).  I do submit that the trustee has

21  satisfied that burden.

22          THE COURT:  Okay.

23          MR. MAHONEY:  The basis for that, Your Honor, is the

24  trustee does in fact allege several badges of fraud in the

25  complaint.  There is the allegation that Hager, the former

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 16 of 27

15

1   principal of the debtor, owns either directly or through other

2   entities the majority interest in each of the entity

3   defendants.  That allegation appears in Paragraph 63 of the

4   complaint.

5           We allege that Hager exercised dominion and control

6   over all of the entity defendants as well as the debtor.  That

7   allegation is in Paragraph 64 of the complaint.

8           We allege that Hager transferred monies between the

9   moving defendants in Paragraph 66 of the complaint.

10          We allege that the entity defendants do not recognize

11  customary corporate formalities in Paragraph 65 of the

12  complaint.

13          We allege that all of these defendants operate out of

14  the same industrial location at 75 Huntington Street in

15  Brooklyn in Paragraph 67 of the complaint.

16          We allege that they share employees in Paragraph 68

17  of the complaint.

18          And then we allege that the transfers, each

19  identified by date and amount, were made to or for the benefit

20  of the moving defendants in Paragraph 69 and 70 of the

21  complaint.

22          You cannot ignore the allegation that Isaac Hager is

23  the driving force on both ends of the 66 transactions that are

24  alleged in this complaint.  He was the principal of the debtor,

25  he had control of the debtor, he caused the debtor to make

16

1   transfers to entities that he is alleged to control on the

2   other end.

3          It is alleged that the debtor's books and records do

4   not reflect the receipt of goods or services constituting fair

5   consideration or reasonably equivalent value in exchange for

6   the transfers.

7          It's alleged that the debtor was insolvent at the

8   time the transfers were made.  It had unsecured creditors at

9   the time that the debtors (sic) were made.

10          If the trustee's allegations are assumed to be true,

11   which they must be at this point in this litigation, these are

12   all insider transfers.  Hager caused the debtor to make

13   transfers either to or for the benefit of himself as the

14   principal of the debtor and other entities that he controlled.

15          Now, the defendants may argue you can't prove that.

16   That is yet to be seen.  But it is alleged and based on the

17   commonality of ownership, the commonality of control, the

18   commonality of location, the sharing of employees, and the lack

19   of corporate formality amongst those moving defendants, there

20   is enough meat on that bone for this Court to say you know

21   what, Trustee, you may prove this, you may not prove this, but

22   if I assume that what you are saying is true, there are the

23   badges and the indicia that Isaac Hager was taking debtor

24   assets and moving them out of the debtor away from the debtor's

25   legitimate creditors.

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 18 of 27

17

1    And from that we can infer the intent to hinder,

2    delay, or defraud those creditors that are no longer able to

3    access the $7.2 million that Isaac Hager caused the debtor to

4    transfer out on the dates and in the amounts that are alleged

5    in the complaint.

6    Now, I think it is also important to note that, as

7    Your Honor is probably well aware, bankruptcy trustees are not

8    held to the same standard of pleading particularity in the

9    heightened pleading standard of Rule 9(b) that other plaintiffs

10    are.

11    In Gowan v. Patriot Group, LLC, it was an adversary

12    proceeding associated with the Dreir, LLP bankruptcy, former

13    Chief Judge Bernstein held that trustees are held to the more

14    liberal or relaxed standard when alleging actual fraud.

15    That holding is well founded because in cases where

16    actual fraud is alleged to have occurred, bankruptcy trustees

17    are coming in after the fact to clean up the mess that is left

18    behind by the debtor.

19    In many cases like Dreir and like this case, the

20    person controlling the debtor has been alleged to obfuscate the

21    fraudulent transfers identified in the complaint.  The debtor's

22    own books and records did not reflect the recipients of these

23    transfers.  It did not, those books and records did not reflect

24    the reason for those transfers.  The debtor's books and records

25    did not reflect any consideration or reasonably equivalent

22-07059-kyp    Doc 55-2    Filed 01/07/25    Entered 01/07/25 16:21:11    Exhibit A -
August 29    2024 Transcript of Adversary Proceeding    Pg 19 of 27

18

1  value that was given back to the debtor in exchange for the

2  transfers.

3        The fact is clear, Isaac Hager controlled the books

4  and records of the debtor.  Isaac Hager is the individual who

5  is alleged to benefit from and be behind the corporations that

6  are alleged to have benefitted from these transfers.

7        We can also take note of the circumstances under

8  which this motion was filed.  It's not a coincidence that

9  dozens of defendants that the trustee alleges to be connected

10  and controlled by Hager are all represented by the same law

11  firm that represents Hager.  There is a commonality in

12  representation which implies a commonality of defense position,

13  defense strategy, and common interest in that representation.

14        It's also worthy of note that prior to Meltzer Lippe

15  being involved, Hager and all of those defendants were

16  represented by Leech Tishman, the successor-in-interest to

17  Robinson Brog.  It's not a coincidence, Your Honor.  It's not a

18  coincidence.

19        And I will point out that the defendant's argument

20  that the trustee should have done more to investigate the who,

21  the what, the where, the why of these transfers, he is alleging

22  that the trustee should have conducted that investigation in 34

23  days.  Thirty-four days.  Because the trustee's designation as

24  trustee of the creditor trust became effective on the effective

25  date of the plan 34 days prior to the statute of limitations.

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 20 of 27

19

1          Let's think about whose responsibility it was to

2     investigate the bonafides of these transactions prior to the

3     trustee's designation as creditor trustee.  Who before the

4     trustee had the fiduciary duty to the creditors of this debtor

5     to investigate whether or not these -- who these transfers went

6     to, why these transfers were made, what consideration or value

7     is given back to the debtor in exchange for these transfers?

8          It was the debtor.  This was a Chapter 11 case where

9     the debtor had that fiduciary duty.  Where the debtor,

10    controlled by Isaac Hager, had the fiduciary duty to

11    investigate whether or not the 66 transfers in this adversary

12    proceeding were avoidable and recoverable for the benefit of

13    the creditors.

14         THE COURT:  Mr. Mahoney, though isn't that why the

15    trust was created?  I assume, because obviously I was

16    transferred over this case, but the plan clearly had this trust

17    created so that the trustee and you know for the benefit of

18    unsecured creditors can go after claims like this.

19         So, while I agree with you that the fiduciary

20    obligation rested with the debtor-in-possession during the

21    case, the plan in some ways contemplated that these lawsuits

22    did exist or these claims did exist, right?

23         MR. MAHONEY:  It absolutely did.  But the person

24    controlling --

25         THE COURT:  Understood.

22-07059-kyp    Doc 55-2    Filed 01/07/25    Entered 01/07/25 16:21:11    Exhibit A -
August 29   2024 Transcript of Adversary Proceeding    Pg 21 of 27

20

1          MR. MAHONEY:  The defendants at this point.  And I

2    think it's worthy to point out that in Leech Tishman's effort

3    to represent the defendant principal of the debtor and all of

4    his other related entities, once he became a target of an

5    avoidance action, made the argument in their motion or in their

6    opposition to our motion for disqualification that it had

7    failed to ensure the debtor did its -- fulfilled its fiduciary

8    duty to analyze the avoidability of these transfers.

9          That is now, the position that the defendants are now

10   taking is that we should ignore the fact that Hager didn't do

11   his job in 23 months and point all of the fingers at the

12   trustee to do what Hager's debtor should have done and to

13   complete that accounting and that investigation in 34 days.

14   The avoidability of these transfers was never supposed to see

15   the light of day.

16          So, at this point, Your Honor, I believe that every

17   single defendant, if they are in fact independent, if they do

18   in fact have their own identity, if they do in fact have their

19   own self-interest, have been provided with sufficient facts to

20   look at their own books and records and say okay, transfer one,

21   nope, we didn't receive that and there's no reason to believe

22   we got the benefit of it, transfer two, so on and so forth, all

23   down the line.

24          Each of these dozen defendants has enough information

25   to determine whether it can admit, deny, or deny knowledge or

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 22 of 27

21

1  information sufficient to admit or deny each of the allegations

2  in this complaint.

3           If there is a confusion created by the fact that

4  these dozens of defendants all have a commonality of interest,

5  all have a commonality of control, do not maintain corporate

6  formalities, those factors should not support an argument that

7  these claims should be dismissed, it should do the opposite.

8  It should demonstrate that there is meat on this bone, that

9  there is reason to believe that all of these defendants are

10  controlled by Hager, the same Hager that controlled the debtor,

11  the same Hager who transferred $7.2 million out of an insolvent

12  debtor to these entities.

13           They should not be relieved from explaining to this

14  Court why that money left the debtor and why that money went to

15  either to or for the benefit of defendants that were controlled

16  by the same person who authorized their transfer on behalf of

17  the debtor.

18           THE COURT:  Okay.  Mr. Steinberg, a very brief

19  rebuttal, if any.

20           MR. STEINBERG:  Yes, Your Honor, I'll be brief.  The

21  trustee is placing enormous weight on factors which normally go

22  to an analysis of whether a corporate veil should be pierced.

23  You don't pierce a corporate veil unless and until you have a

24  judgment of wrongdoing.

25           So, to allege here that there's a commonality of

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 23 of 27

22

1  address, sharing of employees, things of that nature that one

2  would normally assert in a complaint to pierce the corporate

3  veil, don't go to the heart of what the trustee is seeking

4  here, and that is to avoid transfers.

5         They may go to the heart of whether one defendant

6  should be liable for a judgment against another defendant, but

7  they certainly don't weigh on the issue of whether the

8  complaint pleads sufficient facts to allege a fraudulent

9  conveyance claim.  So, I'll leave it at that, Your Honor.

10         I have two other brief points, Your Honor.  The fact

11 that here that the trustee had 34 days is sort of a not really

12 the point here.  The trustee could have asked for a tolling

13 agreement.  He could have devoted more resource to this.

14         As Your Honor correctly pointed out, when this plan

15 was negotiating, the issue of a creditor trust was always on

16 the table.  At that point they should have started or the

17 trustee you know they could have asked for documents and

18 whatnot immediately upon confirmation of this case.

19         This cause of action did not just arise one month

20 before the statute of limitations expired here.  So, they did

21 have -- if they couldn't do or review documents in 34 days,

22 they certainly had the ability to ask for a tolling agreement,

23 to ask this Court to extend the statute of limitations, or to

24 double their resources.  Your Honor, as the trustee points out

25 for $8 million, maybe they should have devoted more resources

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 24 of 27

23

1  to determine what's at stake here.

2        I think, Your Honor, again, if Your Honor has any

3  questions about the defendants' position, I'd be glad to

4  respond.

5        THE COURT:  No.  I'm ready to rule.  Thank you for

6  the arguments.

7        The defendants have moved to dismiss this adversary

8  proceeding under Federal Civil Rule 12(b)(6), made applicable

9  to this proceeding by Federal Bankruptcy Rule 7012(b).

10        The Court has reviewed the parties' arguments and

11  grants the defendants' motion without prejudice to amend the

12  complaint.

13        To survive the motion to dismiss a complaint must

14  contain sufficient factual matter accepted as true, to state a

15  claim to relief that is plausible on its face; Ashcroft v.

16  Iqbal, 556 U.S. 662, 678 (2009).

17        The Court should accept all fact allegations in a

18  complaint as true and draw all reasonable inferences in favor

19  of the non-moving party; Johnson v. Rowley, 569 F.3d 40, 43 (2d

20  Cir. 2009).

21        Threadbare recitals of the elements of a cause of

22  action supported by mere conclusory statements do not suffice;

23  Iqbal, 556 U.S. 678.

24        A complaint must contain more than bare assertions

25  which amount to nothing more than a formulaic recitation of the

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 25 of 27

24

1   elements; Id., 681.

2      The first and fifth claims for actual fraud must meet

3   the pleading requirements of Rule 9(b).  Courts have found that

4   transferees must be listed to meet this standard.  See for

5   example In re M. Fabrikant Sons, Inc., 394 B.R. 721, 734 (Bnkr.

6   S.D.N.Y. 2008).  These claims must be dismissed because the

7   complaint fails to identify the transferees of the fraudulent

8   transfers.

9      The remaining claims for constructive fraud and

10  unjust enrichment are typically examined under the relaxed

11  pleading requirements of Rule 8(a).  Nonetheless, these claims

12  too must be dismissed because the factual allegations are

13  threadbare, often simply setting out the elements of the claim

14  followed by a conclusory statement that the allegations satisfy

15  the standard.

16     The parties have requested the plaintiff be given an

17  opportunity to amend the complaint either via Rule 12(e) or

18  Rule 15.

19     Under Rule 15 a party may amend its pleading only

20  with the opposing party's written consent, or the Court's

21  leave.  The Court should freely give leave when justice so

22  requires.

23     The Court will grant the branch of the trustee's

24  opposition seeking leave to amend, especially given the short

25  period of time the trustee had to file his initial complaint

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 26 of 27

25

1   before the expiration of the applicable statute of limitations.

2           Therefore, the Court will dismiss the complaint but

3   grant the plaintiff leave to amend and file an amended

4   complaint within 45 days of the order dismissing the original

5   complaint and the plaintiff's counsel should submit an order.

6           MR. MAHONEY:  Plaintiff's counsel, Your Honor?

7           THE COURT:  Yes.

8           MR. STEINBERG:  Thank you, Your Honor.

9           THE COURT:  Thank you.  Do you know the e-order

10  system?  I've adopted Judge Morris' e-order system.  Just check

11  the website, Mr. Mahoney, on how to electronically submit the

12  order.

13          Mr. Mahoney, while you're on, you know, I've recently

14  received these cases in some of the other adversary proceedings

15  and sort of in the dark about some of the other APs related to

16  this case.

17          Would it be possible to file a status letter on

18  either the main case or make sure to send an email copy to my

19  chambers, to set out what the status of the cases are so I can

20  figure out which ones I should schedule for motions or for

21  status conferences and the like.

22          MR. MAHONEY:  Yes, Your Honor.

23          THE COURT:  Okay.  Great.

24          MR. STEINBERG:  Your Honor, may I be excused from the

25  Zoom?

22-07059-kyp   Doc 55-2   Filed 01/07/25   Entered 01/07/25 16:21:11   Exhibit A -
August 29   2024 Transcript of Adversary Proceeding   Pg 27 of 27

26

1          THE COURT:  Yes.

2          MR. STEINBERG:  Thank you.

3          THE COURT:  Thank you, Mr. Steinberg.

4          MR. STEINBERG:  Thank you, Your Honor.

5          MR. MAHONEY:  Your Honor, could I have until --

6          THE COURT:  Two weeks.  I mean, you could do it, you

7    can file it before then.  I wasn't trying to put you on a sort

8    of strict schedule.  I just want to get a sense of where the

9    cases on my docket are.

10         MR. MAHONEY:  Absolutely, Your Honor.  I'll file that

11   before September 13th.

12         THE COURT:  Great.

13         MR. MAHONEY:  Thank you.

14         THE COURT:  Thank you.

15                         * * * * *

16

17              **C E R T I F I C A T I O N**

18         I, JANET D. PERSONS, court approved transcriber,

19   certify that the foregoing is a correct transcript from the

20   official electronic sound recording of the proceedings in the

21   above-entitled matter to the best of my ability.

22

23   /s/ Janet D. Persons

24   JANET D. PERSONS

25   J&J COURT TRANSCRIBERS, INC.      Date:   September 10, 2024