**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                                    Chapter 11

WB BRIDGE HOTEL LLC and                    Case No. 20-23288 (KYP) and
159 BROADWAY MEMBER LLC,                   Case No. 20-23289 (KYP)
                                                           (Jointly Administered)
        Debtors.

-------------------------------------------------------------x

NAT WASSERSTEIN, as TRUSTEE of the
WB BRIDGE CREDITOR TRUST,

        Plaintiff,

        -against-                                   Adv. Pro. No. 22-07059 (KYP)

206 KENT INVESTOR II LLC, *et al.*

        Defendants.

-------------------------------------------------------------x


**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**


**APPEARANCES:**

RIMON P.C.
*Counsel to Nat Wasserstein, Trustee of the*
*WB Bridge Creditor Trust*
100 Jericho Quadrangle, Suite 300
Jericho, NY 11753
By:    Anthony C. Acampora, Esq.
       David J. Mahoney, Esq.
       Brian Powers, Esq.
          Of Counsel

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP
*Counsel to Defendants*
190 Willis Avenue
Mineola, NY 11501
By:    Scott A. Steinberg, Esq.
       Kimberly A. Ahrens, Esq.
          Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Defendants 206 Kent Investor II LLC, 206 Kent Investor III LLC, 206 Kent Investor LLC, 206 Kent Mezz LLC (collectively, the "Kent Defendants"), Cornell 46 LLC, Cornell 159 LLC, Cornell 245-247 LLC, Cornell 251-247 LLC, Cornell 251-253 LLC, Cornell 251253 LLC, Cornell 257 LLC, Cornell 259 LLC, Cornell 46 LLC, Cornell Bedford Holdings LLC, Cornell Bedford Member DE LLC, Cornell Crown LLC, Cornell Keap Holdings LLC, Cornell Kent Holdings LLC, Cornell Meeker Holdings LLC, Cornell Meserole DE LLC, Cornell Meserole Holdings LLC, Cornell Myrtle II LLC, Cornell Myrtle LLC, Cornell Realty Management LLC, Cornell Scholes Holdings LLC, Cornell West 34 II LLC, Cornell West 34 Owner LLC (collectively, the "Cornell Defendants," and together with the Kent Defendants, the "Entity Defendants"), and Isaac Hager ("Hager," and together with the Entity Defendants, the "Defendants") have moved to dismiss ("Motion to Dismiss")[1] the claims asserted against them in the *Amended Complaint*, dated October 25, 2024 ("Amended Complaint") (ECF Doc. # 52).  Plaintiff Nat Wasserstein, as trustee ("Trustee") of the WB Bridge Creditor Trust ("Creditor Trust"), opposes the Motion to Dismiss.[2]  For the reasons stated, the Motion to Dismiss is GRANTED in part and DENIED in part.

---

[1]    *See Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint*, dated Jan. 7, 2025 ("Defendants Brief") (ECF Doc. # 55-3); *see also Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss Amended Complaint*, dated Mar. 10, 2025 ("Defendants Reply") (ECF Doc. # 60).  "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding.

[2]    *See Plaintiff's Memorandum in Opposition to the Motion to Dismiss Plaintiff's Complaint*, dated Mar. 3, 2025 ("Trustee Brief") (ECF Doc. # 59).

## BACKGROUND[3]

### A.    The Bankruptcy Filing

WB Bridge Hotel LLC ("Debtor") was the fee owner of real property located at 159 Broadway, Brooklyn, New York ("Property") and was developing the Property into a 26-story hotel with retail space.  (Amended Complaint ¶ 41.)  At the onset of the Covid-19 pandemic, the Debtor and its parent company 159 Broadway Member LLC ("159 Broadway," and together with the Debtor, the "Debtors") attempted to consensually restructure their debts but were unsuccessful.  (*Id*. ¶¶ 35, 42.)  Thus, 159 Broadway's secured lender scheduled a sale of 159 Broadway's membership interests in the Debtor pursuant to Article 9 of the Uniform Commercial Code, and the Debtors responded by filing petitions for relief under Chapter 11 of the Bankruptcy Code on December 21, 2020 ("Petition Date").  (*Id*.)  The Debtor estimated that the hotel's construction was only fifteen percent complete as of the Petition Date.  (*Id*. ¶ 41.)

### B.    The Pre-Petition Transfers

Hager – either directly or through entities he owns and/or controls – is the beneficial owner of most of the equity interests in (i) each of the Entity Defendants, (ii) 159 Broadway, and (iii) the Debtor.  (*Id*. ¶ 43.)  The Entity Defendants, 159 Broadway, and the Debtor operated out of the same principal place of business at 75 Huntington Street, Brooklyn, New York and shared employees.  (*Id*. ¶¶ 48-49.)  Hager exercised dominion and control over the Entity Defendants, 159 Broadway, and the

---

[3]    The background is taken from the well-pleaded allegations in the Amended Complaint, which the Court must accept as true for purposes of this Motion to Dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Debtor.  (*Id.* ¶ 44.)  The Entity Defendants did not recognize corporate formalities and freely transferred money between entities.  (*Id.* ¶¶ 45-46.)

Prior to the Petition Date, Hager caused the Debtor to transfer funds to the Entity Defendants without causing the transferees to provide fair consideration or reasonably equivalent value in return.  (*Id.* ¶¶ 50, 56.)  The Amended Complaint alleges that the Debtor was insolvent and owed debts to unsecured creditors when each transfer was made.  (*Id.* ¶¶ 57-58.)  The transfers were made to one of three bank accounts owned by a *non-party* entity identified in the Amended Complaint as "Cornell Realty LLC" with bank account numbers ending in 0290 ("0290 Account"), 2276 ("2276 Account"), and 3971 ("3971 Account," and collectively with the 0290 Account and 2276 Account, the "Bank Accounts").  (*Id.* ¶ 51.)  The transfers from the Debtor to Cornell Realty LLC were as follows:

| DATE | ACCOUNT | AMOUNT |
|---|---|---|
| 12/26/2017 | 0290 | $15,000.00 |
| 12/27/2017 | 0290 | $15,000.00 |
| 1/5/2018 | 0290 | $50,000.00 |
| 1/9/2018 | 0290 | $15,000.00 |
| 1/23/2018 | 0290 | $1,500.00 |
| 2/1/2018 | 0290 | $25,000.00 |
| 2/8/2018 | 0290 | $10,000.00 |
| 10/1/2018 | 2276 | $20,000.00 |
| 10/4/2018 | 0290 | $25,000.00 |
| 10/15/2018 | 0290 | $20,000.00 |
| 10/30/2018 | 0290 | $3,000.00 |
| 12/6/2018 | 0290 | $10,000.00 |
| 1/11/2019 | 0290 | $35,000.00 |
| 1/14/2019 | 3971 | $7,000.00 |
| 1/16/2019 | 0290 | $12,000.00 |

| DATE | ACCOUNT | AMOUNT |
|---|---|---|
| 1/23/2019 | 0290 | $1,800.00 |
| 2/11/2019 | 3971 | $1,200.00 |
| 4/3/2019 | 0290 | $2,000.00 |
| 4/4/2019 | 0290 | $150.00 |
| 4/9/2019 | 0290 | $650,000.00 |
| 4/10/2019 | 0290 | $2,000.00 |
| 8/26/2019 | 0290 | $200,000.00 |
| 8/27/2019 | 0290 | $100,000.00 |
| 10/7/2019 | 0290 | $800.00 |
| 11/4/2019 | 3971 | $300,000.00 |
| 11/4/2019 | 0290 | $500,000.00 |
| 11/4/2019 | 0290 | $300,000.00 |
| 11/4/2019 | 0290 | $500,000.00 |
| 11/7/2019 | 3971 | $3,000.00 |
| 11/7/2019 | 0290 | $30,000.00 |
| 3/26/2020 | 0290 | $4,300.00 |
| 4/7/2020 | 0290 | $600.00 |
| 4/23/2020 | 0290 | $2,500.00 |
| 9/2/2020 | 0290 | $700.00 |
| **TOTAL TRANSFERS** | | **$2,862,550.00** |

(*Id.*, Schedule A.)  The $2,862,550.00 in transfers set forth in the above chart will collectively be referred to as the "Cornell Transfers."

In addition to the Cornell Transfers, the Debtor made certain transfers to the 0290 Account and 3971 Account with a notation in the Debtor's books and records indicating that those transfers were for the benefit of one or more of the Kent Defendants.  (*Id.* ¶ 54.)  The details for these transfers were as follows:

| DATE | ACCOUNT | AMOUNT |
|---|---|---|
| 12/26/2017 | 3971 | $48,000.00 |
| 2/13/2018 | 3971 | $14,000.00 |
| 3/27/2018 | 0290 | $20,000.00 |
| 4/12/2018 | 0290 | $10,000.00 |
| 5/11/2018 | 0290 | $800.00 |
| 6/28/2018 | 0290 | $2,000.00 |
| 7/3/2018 | 3971 | $500.00 |
| 8/1/2018 | 0290 | $3,500.00 |
| 8/15/2018 | 0290 | $4,100.00 |
| 8/17/2018 | 0290 | $200.00 |
| **TOTAL TRANSFERS** | | **$103,100.00** |

(*Id.*, Schedule B.)  The $103,100.00 in transfers set forth in the above chart will collectively be referred to as the "FBO Kent Transfers."  The Cornell Transfers and the FBO Kent Transfers will collectively be referred to as the "Pre-Petition Transfers."

## C.    The Adversary Proceeding

The first amended plan of liquidation in the Debtors' Chapter 11 cases was confirmed on July 7, 2022, and became effective on November 16, 2022.  (*Id.* ¶¶ 36-38.)  The plan created the Creditor Trust and empowered the Trustee to assert certain causes of action.  (*Id.* ¶¶ 39-40.)

The Trustee commenced this adversary proceeding on December 20, 2022, and filed the Amended Complaint on October 25, 2024.[4]  The Amended Complaint contained the following nineteen Counts:

---

[4]    The original complaint was dismissed by order dated September 10, 2024.  (ECF Doc. # 50.)

| COUNT | DEFENDANT(S) | DESCRIPTION |
|:---:|:---|:---|
| 1 | Cornell Defendants | Avoidance of the Pre-Petition Transfers as intentional fraudulent conveyances under section 276 of the New York Debtor and Creditor Law ("N.Y. DCL").[5] |
| 2 | Cornell Defendants | Avoidance of the Pre-Petition Transfers as constructive fraudulent conveyances under N.Y. DCL § 273. |
| 3 | Cornell Defendants | Avoidance of the Pre-Petition Transfers as constructive fraudulent conveyances under N.Y. DCL § 274. |
| 4 | Cornell Defendants | Avoidance of the Pre-Petition Transfers as constructive fraudulent conveyances under N.Y. DCL § 275. |
| 5 | Cornell Defendants | Avoidance of the Pre-Petition Transfers made within two years of the Petition Date as intentional fraudulent transfers under 11 U.S.C. § 548(a)(1)(A). |
| 6 | Cornell Defendants | Avoidance of the Pre-Petition Transfers made within two years of the Petition Date as constructive fraudulent transfers under 11 U.S.C. § 548(a)(1)(B). |
| 7 | Cornell Defendants | Recovery of the Pre-Petition Transfers on the basis that the Cornell Defendants were unjustly enriched by the transfers. |
| 8 | Kent Defendants | Avoidance of the FBO Kent Transfers as intentional fraudulent conveyances under N.Y. DCL § 276. |
| 9 | Kent Defendants | Avoidance of the FBO Kent Transfers as constructive fraudulent conveyances under N.Y. DCL § 273. |
| 10 | Kent Defendants | Avoidance of the FBO Kent Transfers as constructive fraudulent conveyances under N.Y. DCL § 274. |

---

[5]     The fraudulent transfer provisions of the N.Y. DCL were amended on December 6, 2019 by enactment of the Uniform Voidable Transactions Act, and the amendments apply to transfers made after April 4, 2020.  *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (summary order).  All but three of the Pre-Petition Transfers were made before April 4, 2020, and the Amended Complaint refers to the pre-amendment N.Y. DCL fraudulent transfer statute.  The analyses under the current and prior New York statutes are sufficiently similar such that the Court need not perform a separate analysis for the three Pre-Petition Transfers made after April 4, 2020, which represent a relatively small fraction of the total Pre-Petition Transfers.  *O'Toole v. Heinemann* (*In re Fun Bowl Vacations, Inc.*), 666 B.R. 867, 877 n.9 (Bankr. S.D.N.Y. 2025).

| COUNT | DEFENDANT(S) | DESCRIPTION |
|---|---|---|
| 11 | Kent Defendants | Avoidance of the FBO Kent Transfers as constructive fraudulent conveyances under N.Y. DCL § 275. |
| 12 | Kent Defendants | Recovery of the FBO Kent Transfers on the basis that the Kent Defendants were unjustly enriched by the transfers. |
| 13 | Hager | Avoidance of the Pre-Petition Transfers as intentional fraudulent conveyances under N.Y. DCL § 276. |
| 14 | Hager | Avoidance of the Pre-Petition Transfers as constructive fraudulent conveyances under N.Y. DCL § 273. |
| 15 | Hager | Avoidance of the Pre-Petition Transfers as constructive fraudulent conveyances under N.Y. DCL § 274. |
| 16 | Hager | Avoidance of the Pre-Petition Transfers as constructive fraudulent conveyances under N.Y. DCL § 275. |
| 17 | Hager | Avoidance of the Pre-Petition Transfers made within two years of the Petition Date as intentional fraudulent transfers under 11 U.S.C. § 548(a)(1)(A). |
| 18 | Hager | Avoidance of the Pre-Petition Transfers made within two years of the Petition Date as constructive fraudulent transfers under 11 U.S.C. § 548(a)(1)(B). |
| 19 | Hager | Recovery of the Pre-Petition Transfers on the basis that Hager was unjustly enriched by the transfers. |

Counts 1, 5, 8, 13, and 17 will collectively be referred to as the "Intentional Fraud Claims." Counts 2, 3, 4, 6, 9, 10, 11, 14, 15, 16, and 18 will collectively be referred to as the "Constructive Fraud Claims." Counts 7, 12, and 19 will collectively be referred to as the "Unjust Enrichment Claims."

**D.    The Motion to Dismiss**

The Defendants filed the Motion to Dismiss the claims in the Amended Complaint on January 7, 2025. The Defendants argue that the Amended Complaint fails to cure the deficiencies in the original complaint. (Defendants Brief at 5-7.) Further,

the Defendants point out that the only transferee identified in the Amended Complaint is "Cornell Realty LLC" – an unknown entity that is not a party to this action. (*Id*. at 2-4, 6, 8-13.) Next, the Intentional Fraud Claims should be dismissed because the Amended Complaint fails to allege fraud with particularity. (*Id*. at 9-10, 13-16.) Moreover, the Amended Complaint did not sufficiently allege that the Kent Defendants were the intended beneficiaries of the FBO Kent Transfers. (*Id*. at 4-5, 16-18.) Last, the Unjust Enrichment Claims were insufficiently pled, and such a claim cannot be used as a catchall when other claims fail. (*Id*. at 20-21.)

The Trustee filed his objection on March 4, 2025. Initially, the Trustee states that the entity referred to as "Cornell Realty LLC" in the Amended Complaint is actually Entity Defendant "Cornell Realty Management LLC." (Trustee Brief at 4.) Next, he argues that the Constructive Fraud Claims meet the pleading requirements under Federal Civil Rule 8(a), the Intentional Fraud Claims meet the pleading requirements under Federal Civil Rule 9(b), and the Unjust Enrichment Claims are sufficiently pled. (*Id*. at 8-16.)

The Defendants filed their reply brief on March 10, 2025, and the Court heard argument on March 13, 2025. During oral argument, the Court asked counsel for the Trustee why the Amended Complaint referred to "Cornell Realty LLC" as the initial transferee of the Pre-Petition Transfers and owner of the Bank Accounts rather than Entity Defendant "Cornell Realty Management LLC." Trustee counsel replied that the reference to "Cornell Realty LLC" in the Amended Complaint was a "good faith typo." The Court took the Motion to Dismiss under advisement at the conclusion of oral argument.

## DISCUSSION

### A.      Standard Governing Dismissal for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

*Iqbal* outlined a two-step approach to decide a motion to dismiss. First, the court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient. *Id*. at 678. Second, the court should assume the veracity of all "well-pleaded factual allegations," and determine whether, together, they plausibly give rise to an entitlement of relief. *Id*. at 679.

On a motion to dismiss for failure to state a claim, courts generally "do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may

be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation, internal

quotation marks, and alternations omitted).

**B.    Constructive Fraud Claims**

Counts 6 and 18 rely on section 548(a)(1)(B) of the Bankruptcy Code which

provides that:

> (a) (1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .
>
>> (B) (i) received less than a reasonably equivalent value in exchange for such transfer . . . and
>>
>>> (ii) (I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . .

11 U.S.C. § 548(a)(1)(B).

Under section 544(b) of the Bankruptcy Code, the Trustee may assert a claim

under state fraudulent transfer law if there is an unsecured creditor who could pursue

the action.[6]  Counts 2, 3, 4, 9, 10, 11, 14, 15, and 16 rely on sections 273, 274, or 275 of

the N.Y. DCL, which provides for the avoidance of conveyances made "without fair

consideration" when the transferor was insolvent or rendered insolvent by the

conveyance (section 273), the transferor was engaged or about to be engaged in a

business or transaction that would leave the transferor with unreasonably small capital

(section 274), or the transferor intended or believed that he would incur debts beyond

his ability to pay (section 275).  N.Y. DCL §§ 273, 274, and 275 (repealed 2019).[7]

---

[6]     Section 544(b)(1) of the Bankruptcy Code provides that "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

[7]     *See supra* note 5.

Courts have consistently held that constructive fraudulent transfer claims under the Bankruptcy Code and N.Y. DCL need only satisfy Rule 8(a) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Picard v. Madoff* (*In re Bernard L. Madoff Inv. Sec. LLC*), 458 B.R. 87, 110-11 (Bankr. S.D.N.Y.) (observing that constructive fraudulent transfer claims need not meet the heightened pleading requirements of Federal Civil Rule 9(b) and citing supporting authorities), *leave to appeal denied*, 464 B.R. 578 (S.D.N.Y. 2011); *Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons, Inc.*), 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008) ("Rule 9(b) does not apply to claims sounding in constructive fraudulent transfer . . . and allegations of a constructive fraudulent transfer are subject to less rigorous pleading requirements.") (citation omitted). Rule 8(a) "requires factual allegations that are sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks and alteration omitted), *cert. denied*, 568 U.S. 1087 (2013). "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 284 (S.D.N.Y. 2024) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

Courts use the term "fair consideration" under the N.Y. DCL and "reasonably equivalent value" under the Bankruptcy Code interchangeably when examining constructive fraudulent transfer claims. *Magaliff v. 430 Central Drive LLC* (*In re Christenson*), 667 B.R. 770, 783-84 (Bankr. S.D.N.Y. 2025) (quoting *Off. Comm. of Unsecured Creditors v. Leucadia Nat'l Corp.* (*In re Vivaro Corp.*), 524 B.R. 536, 550

(Bankr. S.D.N.Y. 2015)).  But, whereas a fraudulent transfer claim under the Bankruptcy Code provides for the avoidance of transfers made within two years of the bankruptcy petition, *see* 11 U.S.C. § 548(a)(1), the prior version of New York's fraudulent transfer statute provided for the avoidance of transfers made within six years of the bankruptcy petition.  *Picard v. Estate of Chais* (*In re Bernard L. Madoff Inv. Sec. LLC*), 445 B.R. 206, 231 (Bankr. S.D.N.Y. 2011).

To the extent a transfer is avoided under section 544 or 548 of the Bankruptcy Code, the Trustee may recover, "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1).

In the sections that follows, the Court will address the Constructive Fraud Claims in the following groups: first, claims to avoid the Pre-Petition Transfers made to the Cornell Defendants (Counts 2, 3, 4, & 6); second, claims to avoid the FBO Kent Transfers made for the benefit of the Kent Defendants (Counts 9, 10, & 11); and third, claims to avoid the Pre-Petition Transfers made for the benefit of Hager (Counts 14, 15, 16, & 18).

### 1.    Transfers to the Cornell Defendants

Counts 2, 3, 4, and 6 seek avoidance of the Pre-Petition Transfers from the Cornell Defendants on the basis that they were the recipients of the transfers.  The Pre-Petition Transfers were transferred into one of the three Bank Accounts.  As outlined above, the Amended Complaint states that the Bank Accounts are owned by non-party "Cornell Realty LLC" (*see* Amended Complaint ¶ 51), but the Trustee clarified in his opposition brief (*see* Trustee Brief at 4) and during oral argument that the reference to

Cornell Realty LLC was a typographical error, and the owner of the Bank Accounts is actually Defendant "Cornell Realty Management LLC." Thus, the issue is whether the Trustee's typographical error identifying the wrong transferee should result in the dismissal of his claims against Cornell Realty Management LLC.

The Second Circuit's decision in *Datskow v. Teledyne, Inc.*, 899 F.2d 1298 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990) is instructive. There, plaintiffs sued a manufacturer of the engine of a single-engine plane that crashed, resulting in the death of the passengers. *Id*. at 1300. The plaintiffs' complaint named the defendant as "Teledyne, Inc. Continental Motors Division," but the actual name of the manufacturer was "Teledyne Continental Motors Aircraft Products, a Division of Teledyne Industries, Inc." *Id*. The defendant moved for dismissal, and the plaintiffs cross-moved to amend the complaint to correct the name of the defendant. *Id*. The District Court denied plaintiffs' cross-motion and dismissed their claims, but the Second Circuit reversed reasoning, among other things, that the "plaintiffs did not select the wrong defendant but committed the lesser sin of mislabeling the right defendant . . . ." *Id*. at 1301. In reaching this conclusion, the Second Circuit made the following observations: (1) it was plain from the complaint that the plaintiffs sought to sue the manufacturer of the plane's engine; (2) the plaintiffs listed the correct address for the defendant in the complaint's caption; (3) the name of the entity listed in the original complaint approximated the correct name of the entity; and (4) the majority of the numerous entities in the Teledyne corporate family included the word "Teledyne" in its name. *Id*. at 1301-02; *see also id*. at 1301 ("[T]he line between naming the wrong defendant and mislabeling the right one must be drawn in light of the context of the nomenclature created by the defendant and the labeling undertaken by the plaintiffs assessed against that context."); *cf. Robinson v.*

14

*Sanctuary Music*, 383 F. App'x 54, 57-58 (2d Cir. 2010) (summary order) (citing *Teledyne* and permitting plaintiffs to correct the corporate name of defendant under Federal Civil Rule 60(a)).

Here, the circumstances suggest that the Trustee "committed the lesser sin of mislabeling the right defendant." *Teledyne*, 899 F.2d at 1301. First, the Amended Complaint is clear that it seeks to avoid and recover transfers made to the Bank Accounts. During the March 13 oral argument, Trustee counsel confirmed his belief that the Bank Accounts are owned by Cornell Realty Management LLC. As the holder of the Bank Accounts, Defendant Cornell Realty Management LLC should have been on notice that the claims were focused on transfers into those accounts. Second, the name of the transferee identified in the Amended Complaint – Cornell Realty LLC – closely approximated the actual transferee – Cornell Realty Management LLC. Third, there are *twenty-three* Cornell Defendants, all of which have the word "Cornell" in the name. These entities share employees and a principal place of business (Amended Complaint ¶¶ 48-49), and, according to the Trustee, maintained their books and records "in a manner that made it difficult, if not impossible, to determine which of his entities was receiving each transfer." (Trustee Brief at 1; *see also id*. at 7, 10-11.) Although it would have been highly preferable for the Trustee to have identified the correct transferee in the Amended Complaint, some confusion on his part is understandable.

The allegations against the remainder of the Cornell Defendants are deficient. The Amended Complaint states that the Cornell Defendants "enjoyed a beneficial and equitable interest in each Cornell Account" because Hager disregarded corporate formalities among the entities. (Amended Complaint ¶ 53; *see also id*. ¶ 52 (alleging that the Bank Accounts were "used by Hager as an account for all of the Cornell

Defendants").)  To be an initial transferee under 11 U.S.C. § 550(a)(1), the transferee

must have, at minimum, "dominion over the money or other asset, the right to put the

money to one's own purposes." *Christy v. Alexander & Alexander of New York Inc.* (*In

re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*), 130 F.3d

52, 57-58 (2d Cir. 1997) (quoting *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d

890, 893 (7th Cir. 1988)) (internal quotation marks omitted), *cert. denied*, 524 U.S. 912

(1998.  Whereas the Amended Complaint (as clarified in the Trustee Brief and at oral

argument) alleges that Cornell Realty Management LLC was the owner of the Bank

Accounts, it fails to include any non-conclusory allegation that the other Cornell

Defendants exercised dominion over the funds in the Bank Accounts.

Therefore, Counts 2, 3, 4, and 6 are dismissed except to the extent the claims seek

avoidance and recovery of transfers made to Cornell Realty Management LLC as initial

transferee.

### 2.    Transfers for the Benefit of the Kent Defendants

Counts 9, 10, and 11 seek avoidance and recovery of the FBO Kent Transfers on

the theory that those transfers were made for the benefit of the Kent Defendants.  "The

paradigm transfer beneficiary is a party whose indemnification obligations or whose

debts are extinguished or reduced by the transfer: that is someone who receives the

benefit but not the money."  *Ames Merch. Corp. v. Nikko Am., Inc.* (*In re Ames Dep't

Stores, Inc.*), Adv. P. No. 03-08310 (REG), 2011 WL 1239804, at *5 (Bankr. S.D.N.Y.

Mar. 28, 2011) (footnote, alteration, and internal quotation marks omitted); *accord

Bonded Fin. Servs.*, 838 F.2d at 895.  This Court has explained that the "key to pegging

the entity for whose benefit the initial transfer was made has two sides: 1) the entity

must be the intended beneficiary and 2) the intended benefit must originate from the

16

initial transfer." *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314 (Bankr. S.D.N.Y. 1999).

As alleged in the Amended Complaint, the Debtor's books and records indicate that the FBO Kent Transfers were made into the Bank Accounts for the benefit of one or more of the Kent Defendants. (Amended Complaint ¶ 54.) At the pleading stage, this generalized allegation regarding indicative notations in the books and records is sufficient to plausibly plead claims against the Kent Defendants, particularly where, as here, the Debtor's books and records are difficult to understand. (Trustee Brief at 1, 7, 10-11.)

Thus, the Motion to Dismiss is denied as to Counts 9, 10, and 11.

### 3.    Transfers for the Benefit of Hager

Counts 14, 15, 16, and 18 seek avoidance and recovery of the Pre-Petition Transfers from Hager on the basis that "Hager was an intended beneficiary of each of the [Pre-Petition Transfers]." (Amended Complaint ¶ 55.) To support this allegation, the Amended Complaint states that Hager owned the Entity Defendants and disregarded corporate formalities. (*Id.*) But the Amended Complaint does not allege that these transfers extinguished debts or obligations owed by Hager or otherwise explain how Hager was the intended beneficiary of these transfers. An ownership interest in the transferor and transferee, without more, does not give rise to an assumption that the owner is the intended beneficiary of the transfer. Thus, Counts 14, 15, 16, and 18 are dismissed.

17

C.    **Intentional Fraud Claims**

The Intentional Fraud Claims comprising Counts 1, 5, 8, 13, and 17 rely on section

548(a)(1)(A) of the Bankruptcy Code or N.Y. DCL § 276 (repealed 2019).[8]  Both statutes

provide for the avoidance of transfers made with the intent to "hinder, delay, or

defraud" creditors.  Claims brought under either statute "must be supported by enough

factual allegations to satisfy the pleading requirements set forth under Rule 9(b)."

*Picard v. Madoff*, 458 B.R. at 104 (citing supporting authorities).  Under that rule, "a

party must state with particularity the circumstances constituting fraud or mistake."

FED. R. CIV. P. 9(b).  "Conclusory allegations that defendant's conduct was fraudulent or

merely quoting or paraphrasing the statutory language is not enough to pass muster

under [the] heightened standard." *Geron v. Reifler* (*In re Eight-115 Assocs., LLC*), 650

B.R. 43, 56 (Bankr. S.D.N.Y. 2023) (citations and internal quotation marks omitted).

When a bankruptcy trustee is the plaintiff asserting a fraud claim, "the Rule 9(b)

requirement of particularity is relaxed." *Bankr. Est. of Norske Skogindustrier ASA v.

Cyrus Cap. Partners* (*In re Bankr. Est. of Norske Skogindustrier ASA*), 629 B.R. 717,

733 (Bankr. S.D.N.Y. 2021) (quoting 10 COLLIER ON BANKRUPTCY ¶ 7009.03 (16th ed.

2021)).  The relaxed standard is "predicated upon the fact that it is often the trustee, a

third party, who is pleading fraud on second-hand information." *Id.* (quoting *Hassett v.

Weissman* (*In re O.P.M. Leasing Servs., Inc.*), 35 B.R. 854, 862 (Bankr. S.D.N.Y. 1983)).

Nonetheless, even where the fraud claims are asserted by a bankruptcy trustee,

"general allegations are insufficient" to plead fraud, and the trustee must plead the "time

and place and content of the misrepresentations, and facts with respect to the

---

[8]        *See supra* note 5.

consequences of the fraud." *Geron*, 650 B.R. at 56 (citation, alteration, and internal quotation marks omitted).

The allegations here fall short of meeting the relaxed version of the Rule 9(b) pleading standard. The crux of the Amended Complaint is that Hager owned and controlled the Debtor and the Entity Defendants and transferred money among the entities without recognizing corporate formalities. (Amended Complaint ¶¶ 44-46.) There is no particularized allegation to support the conclusion that the transfers were made with an intent to hinder, delay, or defraud creditors. The Amended Complaint does include an allegation that Hager "utilized the Entity Defendants to fleece the Debtor of its remaining capital . . . to the detriment of the Debtor's legitimate creditors." (*Id.* ¶ 47.) But that allegation is conclusory as to the reason for the transfers and is devoid of any specific facts on how Hager defrauded creditors.

Therefore, Counts 1, 5, 8, 13, and 17 are dismissed.

## D.   Unjust Enrichment Claims

Counts 7, 12, and 19 seek recovery from the Cornell Defendants, Kent Defendants, and Hager, respectively, on the theory that they were unjustly enriched by the Pre-Petition Transfers. To prevail on an unjust enrichment claim, "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (citation, internal quotation marks, and alteration omitted). Nonetheless, the New York Court of Appeals explained that the doctrine is narrow and cannot duplicate a conventional claim:

> [U]njust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.  Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled . . . .  An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

*Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (citations omitted).

Here, the Unjust Enrichment Claims duplicate the fraudulent transfer claims. (*See* Amended Complaint ¶ 77 ("[T]he Cornell Defendants would be unjustly enriched if they were to retain [the Pre-Petition Transfers] since the [Debtor] did not receive reasonably equivalent value in exchange therefor."); *id*. ¶ 92 (The "Kent Defendants would be unjustly enriched if they were to retain [the FBO Kent Transfers] since the Debtor did not receive reasonably equivalent value in exchange therefor."); *id*. ¶ 113 ("Hager would be unjustly enriched if he were to retain [the Pre-Petition Transfers] since the [Debtor] did not receive reasonably equivalent value for such Transfers.").) Therefore, the Unjust Enrichment Claims are dismissed.

## **CONCLUSION**

For the reasons stated, the Motion to Dismiss is GRANTED in part and DENIED in part as follows:

- the Intentional Fraud Claims (Counts 1, 5, 8, 13, and 17) are dismissed;

- the Unjust Enrichment Claims (Counts 7, 12, and 19) are dismissed;

- the Constructive Fraud Claims against the Cornell Defendants (Counts 2, 3, 4, and 6) are dismissed except to the extent that the claims seek to avoid and recover transfers from Cornell Realty Management LLC as initial transferee;

- the Constructive Fraud Claims against Hager (Counts 14, 15, 16, and 18) are dismissed; and

- the Motion to Dismiss is denied as to the Constructive Fraud Claims against the Kent Defendants (Counts 9, 10, and 11).

The parties shall confer regarding the submission of an order resolving the Motion to Dismiss consistent with this Memorandum Decision.  Absent agreement on a form of order, counsel to the Defendants shall settle an order on notice under Local Bankruptcy Rule 9074-1.



**Dated: June 30, 2025**
**Poughkeepsie, New York**

**/s/ Kyu Y. Paek**
_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**